Porfirio **ROMERO–MORALES,**
Petitioner,

v.

**IMMIGRATION AND
NATURALIZATION SERVICE,**
Respondent.

**No. 1214, Docket 93–4205.**

United States Court of Appeals,
Second Circuit.

Argued March 9, 1994.

Decided May 27, 1994.

---

Sam J. Germana, Michael Capone, Cheryl J. Nichols, Law Students, (Neil H. Afran, Esq., International Human Rights Asylum Litigation Clinic, Touro Law Center, Huntington, NY, of counsel), for petitioner.

F. James Loprest, Jr., New York City, Sp. Asst. U.S. Atty. for the S.D. of N.Y. (Mary Jo White, U.S. Atty. for the S.D. of N.Y., Ping C. Moy, Asst. U.S. Atty., of counsel), for respondent.

Before: FEINBERG and MINER, Circuit Judges, and KNAPP, District Judge.*

FEINBERG, Circuit Judge:

Porfirio Romero–Morales petitions for review of an August 1993 decision of the Board of Immigration Appeals (BIA), affirming the denial of Romero's motion to reopen his de-

portation proceeding. That motion had been brought pursuant to section 242B of the Immigration and Nationality Act (the Act), codified at 8 U.S.C. § 1252b. The crux of the motion was that an order of deportation had been improperly entered against Romero in absentia, pursuant to subsection (c)(1) of section 242B. The basis of the BIA's ruling was that Romero had not shown "exceptional circumstances" for his failure to appear, as required by subsection (c)(3) of section 242B. For the reasons given below, we grant the petition, vacate the BIA's order and remand the case for further proceedings.

I. Background and Prior Proceedings

Petitioner Romero, a citizen of Honduras, was apprehended in Texas shortly after entering this country illegally through Mexico in September 1992. At a hearing on October 27, 1992, at which Romero was represented by counsel, Romero conceded deportability. Immigration Judge Jeffrey Zlatow (the IJ) then granted Romero a continuance until November 16, 1992 to apply for relief from deportation, and informed Romero that failure to appear would result in the issuance of a deportation order in absentia.

On November 9, 1992, one week before the scheduled hearing, Romero was released from detention. Having no money, shelter or means of support in Texas, Romero contacted relatives in New York. They sent him money for travel to New York where they could help him financially and assist him in his deportation proceeding. Soon after Romero's arrival in New York, but only two days before the scheduled date of the adjourned hearing, he obtained new counsel.

Romero's new counsel immediately sent by express mail to the IJ in Texas a notice of appearance and Romero's motion for a change of venue to New York with his application for asylum attached. Counsel sent the papers to the INS location in Harlingen, Texas, which was one of the addresses for the office of the IJ and, in counsel's experience, the usual site for such a proceeding. However, the hearing was to be held at the

---

* Honorable Whitman Knapp, Senior United States District Judge for the Southern District of New York, sitting by designation.

Port Isabel Service Processing Center in Los Fresnos, Texas. The papers arrived at Harlingen on November 16, 1992, the day of the hearing.

For reasons that are not clear from the record, the IJ was aware that Romero's papers had been received in Harlingen. However, the IJ did not adjourn the hearing to await receipt of the papers that he knew were in the Harlingen office. Nor did the IJ allow Romero's original counsel—who appeared at the November 16 hearing—to explain that Romero's absence was not a waiver of his application for asylum or to present arguments and evidence in support of the motion for a change of venue. Instead, the IJ found that Romero had received proper notice of the hearing and had conceded deportability. Deeming Romero's failure to appear in person as a waiver of any request for relief from deportation and noting that section 242B(c)(1) thus required issuance of an in absentia deportation order, the IJ ordered Romero deported to Honduras.[1]

After further proceedings not now relevant, Romero filed a motion to reopen with the IJ in April 1993. In June 1993, the IJ denied the motion, finding that Romero had failed to show "exceptional circumstances" under §§ 242B(c)(3) and 242B(f)(2) of the Act for his failure to appear at the November 16, 1992 hearing.[2] In denying the motion to reopen, the IJ noted that Romero's change of venue motion with an application for asylum attached had been sent to the wrong address so that "the Court did not have the actual motion before it at the hearing of November 16, 1992, but the Court was aware that the motion had been submitted in Harlingen."

Without considering the content of the motion papers, the IJ simply observed that "[a] motion for change of venue is no more than a motion. Submission of such a request does not excuse the Respondent from appearing at his scheduled hearing as required."

In June 1993, Romero appealed to the BIA. The BIA dismissed the appeal in August 1993, for the reasons given by the IJ. Thereafter Romero brought this petition for review pursuant to 8 U.S.C. § 1105a. See also 8 U.S.C. § 1252b(c)(4).

## II. · Discussion

Romero argues that his motion to reopen the deportation proceeding should have been granted because his decision to go to his family in New York in order to avoid poverty and homelessness in Texas during the pendency of the hearing constituted "exceptional circumstances" under section 242B. Romero further argues that the IJ deprived him of his right to counsel of his choice and due process by entering the deportation order in absentia, without giving him a reasonable opportunity to be present and without considering new counsel's notice of appearance and the change of venue motion with the application for asylum attached. The INS argues that section 242B required issuance of the in absentia deportation order, and that the motion to reopen was properly denied because Romero failed to show "exceptional circumstances" beyond his control for his failure to appear.

## A. Section 242B of the Act

Section 242B was added to the Act in 1990 in part to address the failure of aliens to

---

1. Section 242B(c)(1) provides, in pertinent part:

    Any alien who, after written notice ... has been provided to the alien or to the alien's counsel of record, does not attend a [deportation] proceeding ..., shall be ordered deported under section 1252(b)(1) of this title in absentia if the [INS] establishes by clear, unequivocal, and convincing evidence that the written notice was so provided and that the alien is deportable.

    8 U.S.C. § 1252b(c)(1).

2. Section 242B(c)(3) provides, in pertinent part:

    Such an [in absentia deportation] order may be rescinded only—

    (A) upon a motion to reopen filed within 180 days after the date of the order of deportation if the alien demonstrates that the failure to appear was because of exceptional circumstances (as defined in subsection (f)(2) of this section) ...

    8 U.S.C. § 1252b(c)(3).

    Section 242B(f)(2) provides:

    The term "exceptional circumstances" refers to exceptional circumstances (such as serious illness of the alien or death of an immediate relative of the alien, but not including less compelling circumstances) beyond the control of the alien.

    8 U.S.C. 1252b(f)(2).

appear at deportation hearings. See H.R.Conf.Rep. No. 955, 101st Cong., 2d Sess. 132 (1990), reprinted in 1990 U.S.C.C.A.N. 6710, 6797; see also H.R.Rep. No. 681, 101st Cong., 2d Sess. 150–51 (1990), reprinted in 1990 U.S.C.C.A.N. 6472, 6556–57; Iris Gomez, The Consequences of Nonappearance: Interpreting New Section 242B of the Immigration and Nationality Act, 30 San Diego L.Rev. 75, 85–86 (1993). Section 242B raises difficult issues of interpretation that are complicated by the fact that Congress apparently did not repeal existing provisions arguably in conflict with the requirements of section 242B. See id. at 146–51.

For example, section 242B(c)(1), see note 1 above, requires the IJ to issue a deportation order in absentia against any alien who fails to appear at a scheduled hearing so long as the INS establishes deportability and proper notice by "clear, unequivocal, and convincing evidence." Section 242B(c)(3), see note 2 above, provides for reopening such proceedings only on a showing of "exceptional circumstances." In contrast, the Act prior to the 1990 amendments provided that "[i]f any alien has been given a *reasonable opportunity to be present* at a [deportation proceeding], and *without reasonable cause* fails or refuses to attend or remain in attendance at such proceeding, the special inquiry officer *may* proceed to a determination in like manner as if the alien were present." 8 U.S.C. § 1252(b) (emphasis added). The 1990 amendments, which added section 242B, apparently did not repeal this section. It is unclear what Congress intended by adding the mandatory language combined with the "exceptional circumstances" standard for reopening under section 242B, while leaving intact the permissive language and less stringent "reasonable cause" standard for avoiding in absentia deportation under § 1252(b).

Romero argues that deportation orders should be issued in absentia only against aliens who obstruct the process. Romero invokes the legislative history of both the 1990 amendments and the original 1952 Act to support the view that in absentia deportation orders were conceived of as a means of dealing with obstructionist tactics. See H.R.Rep. No. 1365, 82d Cong., 2d Sess. 57,

reprinted in 1952 U.S.C.C.A.N. 1653, 1712–13; see also H.R.Rep. No. 681 at 150–51, 1990 U.S.C.C.A.N. at 6556–57 (noting "that willful and unjustifiable failure to attend deportation hearings that have been properly noticed is intolerable.... [F]ailure to appear at such hearing without good cause will result in the entry of an *in absentia* deportation order...."). Romero reconciles section 242B with the preexisting provisions by assuming that Congress intended a dual standard under which only aliens who obstruct the process are subject to in absentia deportation and the stringent "exceptional circumstances" standard to reopen, while the "reasonable cause" standard continues to apply to aliens who have not demonstrated obstructionist behavior. See *Maldonado–Perez v. INS,* 865 F.2d 328, 339–40 (D.C.Cir.1989) (Wald, C.J., dissenting). Romero also argues that the "exceptional circumstances" standard is ambiguous, and that the legislative history of the 1990 Act does not evince an intent to establish a harsh standard. See H.R.Rep. No. 955 at 132, 1990 U.S.C.C.A.N. at 6797 (noting the conference committee's "expect[ation] that in determining whether an alien's failure to appear was justifiable the Attorney General will look at the totality of the circumstances to determine whether the alien could not reasonably have been expected to appear").

In response, the INS argues that the legislative history of the 1952 Act is irrelevant, and that the unambiguous "exceptional circumstances" standard is not limited to any subclass of aliens. The INS further argues that since Romero's decision to leave Texas was not beyond his control, he failed to allege "exceptional circumstances" for his failure to appear.

■ We are aware that the scope of judicial review in immigration matters is narrowly circumscribed. *Reno v. Flores,* ⸺ U.S. ⸺, ⸺, 113 S.Ct. 1439, 1449, 123 L.Ed.2d 1 (1993). Further, where the intent of Congress is not clear, courts are required to accord substantial deference to a permissible construction of a statute by the agency charged with its administration. *Chevron U.S.A., Inc. v. Natural Resources Defense*

*Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984).

■ Although mindful of these admonitions, we do not find it appropriate at this time to resolve the potential conflict in the statutory provisions discussed above. Instead, for reasons set forth below, we remand this case for further proceedings before the IJ.

**B. The Motion to Reopen**

The first factor supporting a remand to the IJ in this case is the insufficiency of the record before us on Romero's motion to reopen. For example, the IJ made no findings as to why Romero failed to appear. It is true, as the IJ noted, that mere submission of a motion for change of venue does not excuse an alien's failure to appear. See *Maldonado–Perez v. INS,* 865 F.2d at 335. Nevertheless, the IJ (and the BIA) are required to "consider the record as a whole [and] issue a reasoned opinion" when considering a motion. *Anderson v. McElroy,* 953 F.2d 803, 806 (2d Cir.1992).

■ There is no indication that the IJ or the BIA examined the contents of Romero's change of venue motion in considering the motion to reopen. Romero's papers stressed his lack of means of support in Texas, the presence in New York of family members who could support him, the New York location of new counsel, Romero's own presence in New York, his desire to testify and have his relatives testify in support of his application for asylum and his stipulation that the INS would not be inconvenienced because he planned to call no government officers from Texas or elsewhere as witnesses. If the IJ and the BIA had considered the bases for that motion as the reasons for Romero's nonappearance, rather than considering only the fact that he had submitted the motion and expected that it would be granted, they might have concluded that Romero's circumstances were "exceptional."

Further, the record contains no findings concerning what transpired between Romero and his new counsel. Romero argues that his New York counsel advised him that his change of venue motion was basically a for-

mality since Romero had conceded deportability. In such a case, INS agents do not need to testify at the deportation hearing, so granting the change of venue would not be costly to the government. Counsel's alleged assumption that the motion would be granted may, under all of the circumstances, have been reasonable. In any event, Romero's good faith reliance on the assurances of counsel, reasonable or not, might have contributed to the establishment of "exceptional circumstances."

The INS argues that the Fifth Circuit has held that failure to attend a deportation hearing on the advice of counsel did not meet the more lenient "reasonable cause" standard of the Act. *Patel v. INS,* 803 F.2d 804, 806 (5th Cir.1986). *Patel,* however, is distinguishable from this case. Patel failed to appear at a scheduled deportation proceeding on the advice of his attorney, who decided not to attend based on his expectation that his motion for a continuance would be granted. *Id.* Patel's attorney acknowledged receiving on "the morning of the hearing" notice that the motion had been denied, yet made no attempt to appear or have Patel appear at the hearing. *Id.* Also, while the attorney had based his request for a continuance on a conflicting engagement and on a need for additional time to prepare, the BIA "carefully considered the attorney's experience ... and the lack of complexity of the case and appropriately concluded" that the attorney had been given adequate time to prepare. *Id.* at 806–07.

In contrast, Romero argues that his attorney had only two days to prepare for the scheduled hearing and travel to Texas. Also, Romero's change of venue motion was based on several factors, which have been summarized above. Finally, in *Patel* the BIA found that the attorney had not established adequate grounds for a continuance, but no similar findings were made in this case.

The lack of findings on the motion to reopen ties in directly with another factor that supports a remand in this case: the failure of the IJ to make any effort to obtain the papers submitted by Romero's New York counsel in Harlingen prior to ordering Romero deported in absentia. Although the IJ

knew that motion papers had been received at another INS office in Texas and presumably could have quickly obtained them, he did not adjourn the hearing even briefly to consider the submitted papers. Nor did the IJ allow Romero's original counsel to argue in support of the motion for a change of venue. The IJ appears to have believed that the literal language of section 242B deprived him of the authority to do anything other than immediately issue a deportation order. The error in such reasoning becomes clear if we assume, for example, that Romero's counsel had submitted motion papers clearly showing that Romero was seriously ill in a New York hospital. In that event, it would be senseless to require the IJ to enter an order of deportation in absentia and then await the inevitable and meritorious petition to reopen.

■ While section 242B(c)(1) requires an IJ to issue a deportation order in absentia under appropriate circumstances, we do not believe that the IJ was precluded from considering the change of venue motion. INS regulations provide an IJ with broad discretion regarding change of venue. 8 C.F.R. § 3.20 (granting IJ discretion to change venue for "good cause"). The IJ is required to take all relevant factors into account in exercising this discretion. *Campos v. Nail,* 940 F.2d 495, 497 (9th Cir.1990) (holding that the district courts have jurisdiction to enjoin immigration judges from denying change of venue motions pursuant to a "consistently-applied and rigid policy" rather than a consideration of the facts of an individual case); *Baires v. INS,* 856 F.2d 89, 91–92 (9th Cir. 1988) (holding that change of venue "motions must be evaluated on a case by case basis").

Further, an IJ, like any judicial officer, has discretion to grant a brief adjournment when doing so will advance the goals of adjudication. See generally 8 C.F.R. § 3.29 ("The Immigration Judge may grant a motion for continuance for good cause shown."); 8 C.F.R. § 242.13 ("the Immigration Judge may grant a reasonable adjournment either at his or her own instance or, for good cause shown, upon application" of the parties). The Ninth Circuit has noted that "whether denial of a continuance in an immigration proceeding constitutes an abuse of discretion

cannot be decided through the application of bright-line rules; it must be resolved on a case by case basis according to the facts and circumstances of each case." *Baires,* 856 F.2d at 91. At oral argument in this case, the government contended that because of section 242B the IJ did not have the power to grant a short adjournment. We disagree. Cf. *Maldonado–Perez,* 865 F.2d at 331 (in pre-section 242B case, court recessed all morning to afford alien an opportunity to appear).

Further, the IJ's failure to consider the change of venue motion (with the asylum application attached) was not cured on the motion to reopen. In denying that motion, the IJ simply characterized Romero's reliance on the granting of the change of venue motion as the sole reason for Romero's failure to appear, without considering the reasons for the change of venue motion. Thus, neither the IJ nor the BIA ever adequately considered Romero's reasons for requesting a change of venue. We do not believe that section 242B compels a blind application of the in absentia deportation provision without regard to a close examination of the facts of the case.

Moreover, the IJ's action here had implications for Romero's constitutional and statutory right to counsel. See 8 U.S.C. §§ 1362 & 1252(b); 8 C.F.R. § 242.10; *Montilla v. INS,* 926 F.2d 162, 166 (2d Cir.1991); *Augustin v. Sava,* 735 F.2d 32, 36 (2d Cir.1984). Romero had selected counsel in New York two days prior to the scheduled hearing date. While Romero had the benefit of counsel in Texas at his first hearing (in October 1992), it was not unreasonable for him to select new counsel on the advice, and with the economic assistance, of his family. The BIA is required to give appropriate consideration to an alien's right to retained counsel when deciding motions. See, e.g., *Baires,* 856 F.2d at 91–93 (motions for change of venue and continuance); *Castaneda–Delgado v. INS,* 525 F.2d 1295, 1300 (7th Cir.1975); *Chlomos v. INS,* 516 F.2d 310, 313–14 (3d Cir.1975). As the Supreme Court has noted, "a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty for-

mality." *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964).

We need not—and do not—decide whether the IJ was required to grant the motion for a change in venue. Rather, we find disquieting the IJ's failure to examine the particulars of the case before him prior to either issuing the in absentia ruling or denying the motion to reopen—a failure that we ascribe to the IJ's mistaken belief that he was statutorily precluded from doing so. For all of the reasons set forth above, we conclude that a remand is advisable.

We grant the petition for review, vacate the BIA's order and remand the case for further proceedings consistent with this opinion.