**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 29 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JIAN JUN TANG,

        Petitioner,

v.

JOHN ASHCROFT, Attorney General,

        Respondent.

No. 03-9510

**PETITION FOR REVIEW OF AN ORDER OF**
**THE BOARD OF IMMIGRATION APPEALS**
**(No. A79-343-650)**

Submitted on the briefs:

Bruce Bowman, Palos Verdes, California, for Petitioner.

Robert D. McCallum, Jr., Assistant Attorney General, Civil Division, Emily Anne Radford, Assistant Director, Allen W. Hausman, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, Department of Justice, Washington, D.C., for Respondent.

Before **SEYMOUR** , **BRISCOE** , and **LUCERO** , Circuit Judges.

**SEYMOUR** , Circuit Judge.

In this immigration proceeding, the Immigration Judge (IJ) entered an order *in absentia* removing Petitioner Jian Jun Tang to China after Mr. Tang failed to appear at a scheduled hearing. Mr. Tang then unsuccessfully sought to reopen his case. He seeks review of the Board of Immigration Appeals' (BIA) decision affirming the IJ's refusal to reopen the removal proceedings. We affirm. [1]

# I

Mr. Tang entered the United States in May 2000 with authorization to remain in this country for one month. Overstaying this authorization, Mr. Tang initially applied for asylum in February 2001, asserting he had been subject to past persecution in China and feared future persecution because he was a "Falun Gong practitioner." R. 101. The Immigration and Naturalization Service (INS) administratively denied his asylum application and began removal proceedings in April 2001. Mr. Tang conceded removal, but sought "asylum, withholding of removal, protection under Article 3 of [the] Convention against Torture and alternatively, voluntary departure." *Id.* at 63. He refiled his asylum application with the IJ.

---

[1] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

-2-

Mr. Tang was living in Ogden, Utah, when the INS began removal proceedings. On April 24, 2001, the INS notified Mr. Tang of his immigration hearing and instructed him to appear before the Immigration Court in Salt Lake City on June 12. The notice specifically indicated that "[i]f you fail to attend the hearing at the time and place designated . . . a removal order may be made by the immigration judge in your absence . . . ." *Id.* at 159. In May 2001, Mr. Tang moved to California and retained a California attorney. On May 17, Mr. Tang's attorney mailed to the INS trial attorney and the Executive Office of Immigration Review in Salt Lake City a motion seeking to change the venue of Mr. Tang's immigration proceeding from Utah to California.

Mr. Tang's attorney asserts that he spoke with an Immigration Court clerk on June 5, who directed him to refile the change-of-venue motion with the IJ in Denver. According to the Attorney General, "[t]he immigration court in Denver, Colorado, hears cases in Salt Lake City, Utah but does not maintain a court staff in that city." Respondent's Br. at 5 n.2. Mr. Tang's attorney avers that he mailed another change-of-venue motion to the IJ in Denver on June 6 pursuant to the court clerk's instructions, and that the IJ's office received the motion on June 8, four days before the scheduled hearing. The record does not reflect whether the IJ was aware of the motion prior to the hearing. In any event, it does not appear the IJ ever ruled on the motion.

-3-

When Mr. Tang failed to appear at his scheduled hearing, the IJ conducted the hearing *in absentia* pursuant to 8 U.S.C. § 1229a(b)(5)(A) and ordered Mr. Tang removed to China. The IJ also deemed Mr. Tang to have abandoned his application for asylum. Mr. Tang timely filed a motion to reopen these proceedings under 8 U.S.C. § 1229a(b)(5)(C)(i), which permits the IJ to rescind a removal order entered *in absentia* "if the alien demonstrates that [his] failure to appear was because of exceptional circumstances."[2]

## II

We have jurisdiction to review the BIA's decision under 8 U.S.C. §§ 1252 and 1229a(b)(5)(D). *Fong Yang Lo v. Ashcroft*, 341 F.3d 934, 936 (9th Cir. 2003) (noting judicial review under 8 U.S.C. § 1252 of an order entered *in absentia* under § 1229a "shall . . . be confined to (i) the validity of the notice provided to the alien, (ii) the reasons for the alien's not attending the proceeding, and (iii) whether or not the alien is removable"). "We review the BIA's decision on a motion to reopen for an abuse of discretion. The BIA abuses its discretion when its decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or

---

[2] Mr. Tang concedes he received notice of the hearing and that he was not in government custody at the time of the hearing. *See* 8 U.S.C. § 1229a(b)(5)(C)(ii) (providing rescission of order entered *in absentia* for those additional reasons).

-4-

conclusory statements." *Mickeviciute v. INS*, 327 F.3d 1159, 1162 (10th Cir. 2003) (internal citations and quotations omitted). We cannot conclude here that the BIA abused its discretion in denying Mr. Tang's motion to reopen his removal proceeding.

An *in absentia* order of removal may be rescinded by motion "if the alien demonstrates that the failure to appear was because of exceptional circumstances." 8 U.S.C. § 1229a(b)(5)(C)(i). Congress has narrowly defined exceptional circumstances as "circumstances (such as serious illness of the alien or serious illness or death of the spouse, child, or parent of the alien, but not including less compelling circumstances) beyond the control of the alien." 8 U.S.C. § 1229a(e)(1); *Fong Yang Lo*, 341 F.3d at 936. We must consider the totality of the circumstances in analyzing whether Mr. Tang's failure to appear at his hearing was due to circumstances beyond his control. *Herbert v. Ashcroft*, 325 F.3d 68, 72 (1st Cir. 2003).

Mr. Tang had the burden of establishing exceptional circumstances warranting rescission. *See Celis-Castellano v. Ashcroft*, 298 F.3d 888, 892 (9th Cir. 2002). The statute's "plain language . . . indicates that this is a difficult burden to meet." *Magdaleno de Morales v. INS*, 116 F.3d 145, 148 (5th Cir.

1997) (describing identical "exceptional circumstances" language under § 1229a(e)(1)'s predecessor, 8 U.S.C. § 1252b(f)(2)). [3]

Mr. Tang asserted in his motion to reopen that he did not attend his hearing because he had filed two motions to change the venue of his removal proceedings from Utah to California. Courts have roundly rejected this argument, however,

---

[3] The majority of cases addressing "exceptional circumstances" interpret the phrase under 8 U.S.C. § 1252b because they arose prior to the 1996 enactment of 8 U.S.C. § 1229a. Because the relevant language and context of the two statutes are identical, we rely on propositions from § 1252b cases in our interpretation of § 1229a.

For the purpose of clarity, we note the evolution of §1229a. Prior to 1990, an IJ could conduct a deportation hearing *in absentia* if the alien had a reasonable opportunity to be present and did not have reasonable cause excusing his or her absence. 8 U.S.C. § 1252(b) (repealed). *See infra* note 4. In 1990, Congress amended the Immigration and Nationality Act to allow an IJ to rescind a deportation order entered *in absentia* in only three situations: "an order may be rescinded only . . . upon a motion to reopen filed within 180 days after the date of the order of deportation if the alien demonstrates that the failure to appear was because of exceptional circumstances (as defined in subsection (f)(2)), or upon a motion to reopen filed at any time if the alien demonstrates that the alien did not receive notice in accordance with subsection (a)(2) or the alien demonstrates that the alien was in Federal or State custody and did not appear through no fault of the alien." 8 U.S.C. § 1252b(c)(3). Congress then defined exceptional circumstances: "[t]he term 'exceptional circumstances' refers to exceptional circumstances (such as serious illness of the alien or death of an immediate relative of the alien, but not including less compelling circumstances) beyond the control of the alien." 8 U.S.C. § 1252b(f)(2).

In 1996, Congress amended the Immigration and Nationality Act and replaced 8 U.S.C. § 1252b(c)(3)(A) with 8 U.S.C. § 1229a (b)(5)(C)(i). The relevant portions of section 1229a are identical in all respects except that what formerly was called "deportation" is now referred to as "removal." *Compare* former 8 U.S.C. § 1252b(c)(3)(A) *with* 8 U.S.C. § 1229a (b)(5)(C)(I). The definition of "exceptional circumstances" did not change.

because the "mere submission of a motion for change of venue does not excuse an alien's failure to appear." *Romero-Morales v. INS*, 25 F.3d 125, 129 (2d Cir. 1994) (applying 8 U.S.C. § 1252b); *see also, e.g., Hernandez-Vivas v. INS*, 23 F.3d 1557, 1559 & n.1, 1560 (9th Cir. 1994) (mere filing of motion to change venue not reasonable cause for absence at deportation hearing under 8 U.S.C. § 1252(b)); *Wijeratne v. INS*, 961 F.2d 1344, 1346-47 (7th Cir. 1992) (upholding *in absentia* hearing under 8 U.S.C. § 1252(b) despite petitioner's motion for change of venue); *Maldonado-Perez v. INS*, 865 F.2d 328, 330-32, 335-36 (D.C. Cir. 1989) (same); *cf. Patel v. United States INS*, 803 F.2d 804, 806 (5th Cir. 1986) (applying 8 U.S.C. § 1252(b) and noting mere submission of motion for change of venue not reasonable cause for failure to appear at hearing).[4] Mr. Tang's obligation to attend his scheduled hearing continued unless and until the IJ granted a change of venue. *See, e.g., Maldonado-Perez*, 865 F.2d at 335; *Patel*, 803 F.2d at 806. Moreover, "it is never reasonable to assume that a motion to

---

[4] Prior to the 1990 amendments, 8 U.S.C. § 1252(b) provided that "[i]f any alien has been given a reasonable opportunity to be present at a proceeding under this section, and without reasonable cause fails or refuses to attend or remain in attendance at such proceeding, the special inquiry officer may proceed to a determination in like manner as if the alien were present." *Id.*

Congress subsequently raised the standard for justifying absence from "reasonable cause" to "exceptional circumstances." *See supra* note 3. The "reasonable cause" cases inform our analysis because they address Mr. Tang's argument that his failure to attend his hearing was mitigated by his filing of two motions for a change of venue.

change venue will be granted . . . [and] the burden of inquiry regarding the status of a motion to change venue must remain on the alien." *Hernandez-Vivas*, 23 F.3d at 1560-61 (reviewing alien's failure to appear under 8 U.S.C. § 1252(b)).

Neither Mr. Tang nor his attorney made arrangements with the Immigration Court to waive Mr. Tang's attendance at the hearing or to attend the hearing telephonically, although the Immigration Court procedural rules clearly set forth the possibility of doing so. *See* 8 C.F.R. § 3.25(a), (c) (subsequently redesignated 8 C.F.R. § 1003.25(a), (c)); *see also* 8 U.S.C. § 1229a(b)(2)(A)(ii), (iv). Although Mr. Tang asserts that he and his attorney were in the attorney's office on the hearing date waiting for the Immigration Court to call, neither Mr. Tang nor his attorney attempted to contact the court concerning the outcome of the scheduled hearing. Yet, "[i]t seems reasonable to assume that an alien or his counsel would have at least attempted" to "call and explain the petitioner's absence." *Maldonado-Perez*, 865 F.2d at 335. In sum, Mr. Tang failed to establish exceptional circumstances beyond his control excusing his failure to attend his scheduled removal hearing.

Mr. Tang also unsuccessfully asserted to the BIA that he did not appear at his hearing due to his attorney's ineffective representation. *See* R. at 19-20. He vaguely reasserts that argument to this court. *See* Petitioner's Br. at 8, 10. While an alien does not have a right to appointed counsel, he does have a Fifth

Amendment right to a fundamentally fair proceeding. *Osei v. INS*, 305 F.3d 1205, 1208 (10th Cir. 2002) ("[t]his court has recognized that the Fifth Amendment guarantees aliens subject to deportation the right to a fundamentally fair deportation proceeding"). Accordingly, Mr. Tang "can state a Fifth Amendment violation if he proves that retained counsel was ineffective and, as a result, [he] was denied a fundamentally fair proceeding." *Id.* Assuming without deciding that an attorney's deficient performance can amount to exceptional circumstances under § 1229a(e)(1) sufficient to reopen removal proceedings pursuant to § 1229a(b)(5)C)(i), Mr. Tang's petition fails because he failed to comply with the BIA's requirements for establishing ineffective assistance of counsel. *See, e.g., Fong Yang Lo*, 341 F.3d at 935, 936-37; *Monjaraz-Munoz*, 327 F.3d at 896-97.

In order to assert an ineffective-assistance claim in support of his motion to reopen, Mr. Tang had to comply with the BIA's requirements:

> First, the motion should be supported by an affidavit of the allegedly aggrieved applicant attesting to the relevant facts. Second, before the allegation is presented to the Board, the former counsel must be informed of the allegations and allowed the opportunity to respond. Any subsequent response from counsel, or report of counsel's failure or refusal to respond should be submitted with the motion. Finally, if it is asserted that prior counsel's handling of the case involved a violation of ethical or legal responsibilities, the motions should reflect whether a complaint has been filed with appropriate disciplinary authorities regarding such representation, and if not, why not.

*Osei*, 305 F.3d at 1209 n.2 (internal quotation omitted) (applying *Matter of Lozada*, 19 I. & N. Dec. 637, 639 (BIA 1988) *aff'd*, 857 F.2d 10 (1st Cir. 1988)); *see also, e.g., Fong Yang Lo*, 341 F.3d at 936-37; *Hamid v. Ashcroft*, 336 F.3d 465, 468-69 (6th Cir. 2003); *Xu Yong Lu v. Ashcroft*, 259 F.3d 127, 129, 132-33 (3d Cir. 2001); *Stroe v. INS*, 256 F.3d 498, 501-02 (7th Cir. 2001); *Stewart v. INS*, 181 F.3d 587, 596 (4th Cir. 1999).

Several circuits do not require strict compliance with *Lozada*'s requirements. *See, e.g., Fong Yang Lo*, 341 F.3d at 937-38 & 937 n.4 (discussing necessity of flexibility in *Lozada* analysis to ensure proper assessment of ineffective assistance claims, discourage meritless claims, and hold attorneys to appropriate standards of performance); *Xu Yong Lu*, 259 F.3d at 133 (warning against inherent dangers of applying *Lozada* strictly). *But see Stroe*, 256 F.3d at 504 (doubting that alien who fails to comply with Board's [*Lozada*] criteria can succeed in challenging [the BIA's] decision). We need not decide whether substantial compliance would be sufficient because Mr. Tang has made no attempt to comply with any of *Lozada*'s requirements. *See Gbaya v. United States Attorney Gen.*, 342 F.3d 1219, 1222 & n.2 (11th Cir. 2003) (declining to address whether substantial compliance would suffice where alien failed to comply with two of three *Lozada* requirements); *see also Hamid*, 336 F.3d at 468-69 (holding insufficient the satisfaction of only one of *Lozada*'s three requirements); *Xu Yong*

*Lu*, 259 F.3d at 134-35 (determining BIA did not abuse discretion in affirming denial of motion to reopen where alien failed to comply with two of three *Lozada* requirements).

Under the circumstances of this case, we are not persuaded the BIA abused its discretion in affirming the IJ's decision not to reopen Mr. Tang's removal proceeding. Consequently, we DENY Mr. Tang's petition for review.