# United States Court of Appeals

## For the First Circuit

No. 03-1922

DIEUDONNA GEORCELY,

Petitioner,

v.

JOHN ASHCROFT, ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER

OF THE BOARD OF IMMIGRATION APPEALS

Before

Boudin, <u>Chief Judge</u>,

Torruella and Howard, <u>Circuit Judges</u>.

<u>David Iverson</u> on brief for petitioner.
    <u>Michelle R. Thresher</u>, Office of Immigration Litigation, Civil Division, Department of Justice, <u>Peter D. Keisler</u>, Assistant Attorney General, Civil Division, Department of Justice, and <u>Linda S. Wendtland</u>, Assistant Director, Office of Immigration Litigation, on brief for respondent.

July 12, 2004

**BOUDIN**, **Chief Judge**. Dieudonna Georcely, a citizen of Haiti, arrived in the United States Virgin Islands on or about January 25, 2002. In January 2002, the Immigration and Naturalization Service ("INS"), as it was then named, charged Georcely with removability under 8 U.S.C. § 1182(a)(6)(A)(i) (2000) as an alien who had arrived in the United States without lawful authority. Georcely conceded removability but said that he intended to apply for asylum, withholding of removal, and relief under the Convention Against Torture.[1]

On or about March 15, 2002, the immigration judge set a hearing to be held in St. Thomas, the Virgin Islands, on April 29, 2002. Georcely had by then apparently relocated to Boca Raton, Florida, to stay with a cousin. On April 11, 2002, his lawyer mailed to the immigration judge a motion to change venue to Miami, Florida. The day before the scheduled hearing Georcely's counsel called the immigration court and was informed that the court had not yet received the motion.

Neither Georcely nor his counsel appeared at the April 29, 2002, hearing. As is permitted by the statute, the immigration

---

[1]Asylum and withholding of removal are both administrative measures, with somewhat different incidents, that can be invoked by an alien who is threatened with harm. See 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1), 1231(b)(3)(A) (2000); 8 C.F.R. §§ 208.13(b), 208.16 (2004); see also Mekhoukh v. Ashcroft, 358 F.3d 118, 130 (1st Cir. 2004).

judge conducted the hearing in absentia, 8 U.S.C. § 1229a(b)(5)(A) (2000), and on that same day ordered Georcely removed to Haiti.

On June 25, 2002, Georcely's counsel filed a motion to reopen and change venue claiming that Georcely "in good faith believed that a change of venue to the Miami District, where he was residing, would be or had been granted." The apparent delay in the mail and failure of the immigration court to approve the transfer were, he asserted, events "beyond the knowledge much less control of the alien" and supported a finding of "exceptional circumstances" justifying relief. See 8 U.S.C. § 1229a(b)(5)(C), (e)(1) (2000).

The INS opposed the request to reopen and on July 18, 2002, the immigration judge denied Georcely's motion. The judge said that Georcely's attorney had "filed many motions for reopening claiming the same situation," that neither an alien nor his counsel were entitled to assume that a motion to change venue will be granted, and that Georcely's counsel was "well aware" that the motion had not been granted because he had called the court the day before and was told the motion had not arrived.

On August 16, 2002, Georcely filed a motion to reconsider. He said it was reasonable for him to believe that the motion would be granted because at an earlier bond reduction hearing for Georcely, the immigration judge had inquired of the INS whether it would oppose a change in venue to the Miami district if

-3-

the petitioner so requested, and the INS attorney allegedly said she would have no objection. Georcely's counsel also argued that it was reasonable for him to think that his mailed motion would arrive within 5 to 7 days--well within the 18 days before the hearing.

Georcely's counsel stated that his alien client "had inquired repeatedly" as to whether the motion to change venue had been sent and was told that it had been. Accordingly, Georcely "was unaware" that the motion had not been received or granted and that he had not been excused from appearing in St. Thomas. Even if Georcely had known that he was not excused, said counsel, Georcely could not have arrived in St. Thomas "on one day's notice."

Finally, Georcely's counsel cited Matter of Lozada, 91 I. & N. Dec. 637 (BIA 1988), as holding that "ineffective assistance of counsel is another ground for finding of exceptional circumstances." He described as "analogous" another case (Matter of Grijalva-Barrera, 21 I. & N. Dec. 472 (BIA 1996)), where relief was granted because counsel as a "tactic of delay" deliberately misinformed the respondent that he did not have to appear. Counsel continued:

> Lozada required that a bar complaint be filed
> in order to claim ineffective assistance of
> counsel; however, [Esposito v. INS, 987 F.2d
> 108, 110-11 (2d Cir. 1993) and Figueroa v.
> INS, 886 F.2d 76 (4th Cir. 1989)] hold that
> ineffective assistance of counsel can be
> established without such complaint being made.
> Obviously, undersigned is less than

-4-

comfortable making a self-denunciation to the bar, but will do so if the Court so requires.

The immigration judge denied the motion to reconsider, saying that this was the fifth time the court had to confront counsel's "way of representing clients before this Court" and that the court "will not tolerate any longer this counsel's way of representing clients before this Court"; that lawyers who file motions have to take account of the mails; and that "counsel was less than diligent in this and all the other cases where he brings up the same shaky excuses."

Georcely's counsel then filed an appeal to the Board of Immigration Appeals ("BIA"), repeating earlier arguments and adding that Georcely, "unemployed and indigent, would not have been able to afford a ticket to go to St. Thomas in any event." The BIA denied the appeal, saying in substance that the exceptional circumstances test was intended for compelling matters (e.g., a serious illness preventing attendance) and did not include an alien's voluntary absence from a scheduled hearing.

Georcely now appeals to this court. At the threshold, we face an issue of venue. Shortly before the scheduled oral argument, Georcely's counsel moved to submit the case without argument (a motion we granted), observing in passing that the case arose in the Virgin Islands and that the Third Circuit customarily had jurisdiction over cases arising in the Virgin Islands. See 28 U.S.C. § 1291 (2000); 48 U.S.C. § 1613a(c) (2000); Government of

-5-

<u>Virgin Islands</u> v. <u>Rivera</u>, 333 F.3d 143, 146 (3d Cir. 2003).
Construing this as a motion to change venue, the government
responded, saying that it

> agree[d] with the Petitioner that because the
> hearing during which the Petitioner was
> ordered removed <u>in absentia</u> took place in the
> Virgin Islands, this case is not properly
> before this Court, and should be transferred
> to the Third Circuit.

The applicable statute for review of INS decisions, 8
U.S.C. § 1252(b)(2) (2000), provides (as to "venue and forms") that
"[t]he petition for review shall be filed with the court of appeals
for the judicial circuit in which the immigration judge completed
the proceedings." The question posed by this language--actually a
double question of some difficulty--can be understood only against
the background of the geographic operations of the immigration
court in the Caribbean.

It appears from the information available to us that the
immigration court responsible for the present case is based in
Guaynabo, Puerto Rico, that it has jurisdiction over Puerto Rico,
St. Thomas and St. Croix (the latter two being U.S. Virgin
Islands), and that the immigration judge based in Guaynabo holds in
person hearings in the Virgin Islands as well as telephonic
hearings with St. Croix.[2] In our case--perhaps in all such cases--

---

[2]<u>See</u> United States Department of Justice, <u>Guaynabo, PR Immigration Court - Frequently Asked Questions</u>, <u>at</u> http://www.usdoj.gov/eoir/sibpages/saj/faq.htm (last visited May 25, 2004).

stamps on the documents indicate that filings by counsel with the immigration court were sent to and docketed in Guaynabo.

Here, the immigration judge conducted the in absentia hearing that resulted in the removal order in St. Thomas; but there is a reasonable likelihood that the order was officially filed and docketed at the headquarters in Guaynabo; admittedly, the record is unclear on this point.[3] If the removal order "completed" the proceedings, the question posed would be whether the completion occurred in the Third Circuit where the ruling was made (St. Thomas) or the First Circuit (Guaynabo) where we think that the order was officially filed and docketed.

If the order was officially filed and docketed in Guaynabo, the most straightforward reading of the language of section 1252(b)(2) would probably lead us to conclude that the removal proceedings were completed in Guaynabo (assuming that they were completed by the removal order rather than by the later denial of the motion to reopen). This is so because a judicial order is normally effective when filed and docketed, see United States v. Fiorelli, 337 F.3d 282, 287 (3d Cir. 2003); Willhauck v. Halpin, 953 F.2d 689, 701 (1st Cir. 1991); 11 Wright, Miller, and Kane,

---

[3]Mysteriously the removal order itself has a typed letterhead and, after the legend "Immigration Court," there follows on a new line, "St. Thomas, Virgin Islands." Whether this latter reference is merely to the site of the hearing or whether there is some arrangement for filing and docketing in St. Thomas remains unexplained.

<u>Federal Practice and Procedure</u> § 2785 (2d ed. 1995 & Supp. 2004), although exceptions exist. As it happens, the appeal in this case was originally filed in the Eleventh Circuit, presumably because counsel hoped to associate it with the Miami office of the INS. When the INS then moved for a transfer to this circuit, a motion not opposed by Georcely, the INS said that "the immigration judge completed proceedings in San Juan, Puerto Rico."

This view that the place of filing and docketing controls must be tentative. The statutory language is so far from conclusive, <u>see</u> <u>Ramos</u> v. <u>Ashcroft</u>, No. 03-4050, 2004 U.S. App. Lexis 11692, at *2-*3 (7th Cir. June 15, 2004), that absent legislative history, policy concerns would matter if they weighed heavily on either side. Further facts might affect the outcome (<u>e.g.</u>, perhaps the removal order for some reason was effective when announced). And, most important, a definitive ruling is unnecessary here because--as we will see--the venue issue has been forfeited.

In the interest of getting issues on the table, a further complication should be mentioned. Even if the removal proceedings might otherwise be deemed to have been completed in St. Thomas (contrary to our tentative assessment), the removal order itself was followed by a motion to reopen, later denied without an oral hearing. Both the motion and the order denying it were filed and docketed in Guaynabo. <u>See also</u> 8 C.F.R. § 1003.31(a) (2004) ("All

documents and applications that are to be considered in a proceeding before an Immigration Judge must be filed with the Immigration Court having administrative control over the Record of Proceeding.")  In such a case, does Guaynabo thereby become the place of completion?

On this issue, the government argues that the place where the immigration judge "completed" the proceedings is the place where the immigration judge issued a final order of removal "notwithstanding the fact that [an] alien subsequently files a motion to reopen or reconsider, except when the Judge grants the Petitioner's motion and reopens proceedings." The government reads Nwaokolo v. INS, 314 F.3d 303 (7th Cir. 2002), as suggesting an opposite reading of the statute but regards it as mistaken.

In all events, we need not resolve such questions.  The challenge is to venue, not jurisdiction; the statute says so, as does Nwaokolo, 314 F.3d at 306.  Objections to venue are normally waived unless asserted in timely fashion.  28 U.S.C. § 1406(b) (2000); W.A. Stackpole Motor Transp., Inc. v. Malden Spinning & Dyeing Co., 263 F.2d 47, 50 (1st Cir. 1958); 15 Wright, Miller & Cooper, Federal Practice and Procedure § 3829 (2d ed. 1986). Although section 1406(b) explicitly requires a "timely" objection in district court proceedings, Nwaokolo, 314 F.3d at 306, found the same requirement implicitly applicable to immigration appeals, as do we.

Venue requirements are normally for the convenience of the parties and, if the parties do not object, ordinarily there is no policy objection to proceeding in any court with jurisdiction. Here, the government sought, and Georcely did not contest, the transfer to this circuit as the appropriate venue--and certainly that was a colorable contention. Any contrary suggestion, belatedly made on the eve of a scheduled argument, is forfeited and need not be considered.

No one circuit can speak definitively as to when the proceedings are "completed," and yet uniform rules are highly desirable for both the courts and the litigants. Perhaps INS regulations would help toward a solution, see Ramos v. Ashcroft, supra, 2004 U.S. App. Lexis 11692, at *2 (suggesting that course); Congress can certainly provide one. Copies of this decision will be sent to the appropriate congressional authorities and, in this case, to the Attorney General.

Turning to the merits, we begin with the statutory framework. When the BIA issues its own opinion, we review the Board's decision and not the immigration judge's. Albathani v. INS, 318 F.3d 365, 373 (1st Cir. 2003). The statute governing judicial review of in absentia removal orders confines review to certain limited issues but among them is "the reasons for the alien's not attending the proceeding." 8 U.S.C. § 1229a(b)(5)(D).

-10-

The standard of review ordinarily varies with the nature of the issue, <u>Bolton</u> v. <u>Taylor</u>, 367 F.3d 5, 7-8 & n.1 (1st Cir. 2004).

An order for removal entered <u>in absentia</u> may be rescinded "upon a motion to reopen filed within 180 days after the date of the order of removal if the alien demonstrates that the failure to appear was because of exceptional circumstances." 8 U.S.C. § 1229a(b)(5)(C). The statute says that this means "exceptional circumstances (such as serious illness of the alien or serious illness or death of the spouse, child, or parent of the alien, but not including less compelling circumstances) beyond the control of the alien." <u>Id.</u> § 1229a(e)(1).

It appears that Georcely knew that a hearing had been set in St. Thomas--the notice to him so provided--and that his lawyer had moved for a transfer of the matter to Miami. But there is no claim that his lawyer told him that the motion had been granted. So Georcely, as well as his lawyer, were obligated to appear at the St. Thomas hearing. Simply to assume that the motion would be granted because the INS had not objected is not remotely an exceptional circumstance beyond the alien's control. See <u>Tang</u> v. <u>Ashcroft</u>, 354 F.3d 1192, 1195 (10th Cir. 2003).

The exceptional circumstances requirement, a fairly tough one, was adopted by Congress precisely because failures to appear

at scheduled INS hearings had greatly burdened the agency.[4]  To charge Georcely with knowledge of his legal obligations may be unrealistic--he apparently does not read English--but such knowledge is expected of all, e.g., Atkins v. Parker, 472 U.S. 115, 130 (1985); United States v. Aquino-Chacon, 109 F.3d 936, 938 (4th Cir.), cert. denied, 522 U.S. 931 (1997), and the obligation as applied here is less surprising than many others.

Georcely's counsel told the Board (late in the day and without evidence) that his client was indigent and could not at the last minute have come back to St. Thomas.  If so, then he was ill-advised to go to Miami in the first place.  Certainly he had no excuse for waiting until the hearing date had passed to raise such an excuse.  Compare Herbert, 325 F.3d at 70, 72 (exceptional circumstances where counsel was held in another hearing and promptly advised the immigration court); Romero-Morales v. INS, 25 F.3d 125, 127, 129 (2d Cir. 1994).

We note also that Georcely did not submit affidavits or any evidentiary materials to the immigration judge or BIA in support of his claim that he was financially unable to travel to the hearing, see, e.g., Ursachi v. INS, 296 F.3d 592, 594 (7th Cir.

---

[4]Herbert v. Ashcroft, 325 F.3d 68, 71 (1st Cir. 2003).  Prior to 1990, the statute required only that the alien show "reasonable cause" excusing his or her absence.  Tang, 354 F.3d at 1194 n.3, 1195 n.4; see also Maldonado-Perez v. INS, 865 F.2d 328, 333 (D.C. Cir. 1989); Immigration Act of 1990, Pub. L. No. 101-649, § 545, 104 Stat 4978, 5063-65 (codified at 8 U.S.C. § 1252b(c)(3), (f)(2) (repealed)).

2002); In re J-P-, 22 I. & N. Dec. 33, 34-35 (BIA 1998). Nor did he explain how he was able to travel to Florida from the Virgin Islands but could not afford the return trip, see Hernandez-Vivas v. INS, 23 F.3d 1557, 1560 (9th Cir. 1994); Maldonado-Perez, 865 F.2d at 333, or why he could not have stayed in the Virgin Islands in the first place until the motion was granted.

Turning from Georcely's conduct to that of his counsel, the BIA has held that ineffective assistance of counsel can under certain circumstances count as an exceptional circumstance. See In Re Rivera, 21 I. & N. Dec. 599, 602-03 (BIA 1996). Indeed, in immigration cases, ineffective assistance is sometimes treated as a basis for relief without regard to such a statutory hook, even though such proceedings are civil and the Sixth Amendment guarantee inapplicable.[5]

However, if freely indulged, ineffective assistance claims would undermine the stringent requirements of section 1229a(b)(5)(C) (and much else in the statute besides) so the BIA has insisted that the alien has to comply with the procedural requirements of Matter of Lozada, 19 I. & N. Dec. 637 (BIA 1988).

---

[5]This is no easy accomplishment since plenty of other civil cases have serious consequences, yet the party is still charged with his lawyer's errors; but the cases do treat immigration proceedings differently, using the due process clause as the justification. See, for example, Jobe v. INS, 238 F.3d 96, 99 n.3 (1st Cir. 2001); Hernandez v. Reno, 238 F.3d 50, 55 (1st Cir. 2001); and Lozada v. INS, 857 F.2d 10, 13-14 (1st Cir. 1988), for pertinent background.

These include the filing of a bar complaint against counsel or adequately explaining why the complaint has not been filed.  See Tang, 354 F.3d at 1196; In Re Rivera, 21 I. & N. Dec. at 603.  So far as we know, neither has occurred in this case.

Although we have hinted that full compliance with Lozada's requirements might be excused in an appropriate case, Betouche v. Ashcroft, 357 F.3d 147, 150 (1st Cir. 2004), the Lozada requirements generally make sense.  It is all too easy after the fact to denounce counsel and achieve a further delay while that issue is sorted out.  And in the absence of a complaint to the bar authorities, counsel may have all too obvious an incentive to help his client disparage the quality of the representation.

The present case is a perfect example.  A claim of inadequate representation has not been squarely made either before the Board or on this appeal.  Counsel has sought to make his own carelessness, if that is the proper characterization, an excuse for Georcely's failure to appear, while never conceding that his own conduct as counsel was ineffective representation--a standard that requires a showing of significant incompetence and a likely adverse effect on the ultimate outcome.  Strickland v. Washington, 466 U.S. 668, 691-92 (1984).

It is not even clear that counsel was "incompetent," although surely more sloppy than he should have been.  There was probably good reason to expect that the mail would arrive more

-14-

quickly, that (given the alleged INS lack of opposition) the motion would be granted, and that a new hearing date in Miami would be set. This self-induced expectation does not excuse the "exceptional circumstances" test for reopening, but counsel's failure to check in timely fashion that the motion was received and granted is a default hardly unknown in law practice.[6]

In all events, the ineffective assistance claim has not been squarely raised; no reason for ignoring <u>Lozada</u> has been suggested; and ineffective assistance <u>and</u> prejudice are far from apparent on this record. If Georcely wishes to pursue this issue, he is free to attempt habeas proceedings in the district court. Several circuits have suggested this remedy is available for such claims, <u>e.g.</u>, <u>Chmakov</u> v. <u>Blackman</u>, 266 F.3d 210, 215 (3d Cir. 2001), but we have no occasion to address the subject here.

<u>Affirmed</u>.

---

[6]The immigration judge's suggestion that this was a routine practice by this counsel is a different matter but the immigration court is aware of the situation and is free to address the problem.