F I L E D
**United States Court of Appeals**
**Tenth Circuit**

**AUG 17 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MOHAMMAD SADEGH
NAVIDI-MASOULEH,

Petitioner,

v.

JOHN ASHCROFT,

Respondent.

No. 03-9588
(BIA No. A 75 289 738)
(Petition for Review)

---

**ORDER AND JUDGMENT** *

---

Before **TACHA** , Chief Judge, **MURPHY** , Circuit Judge, and **CAUTHRON** ,**
Chief District Judge.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

\* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

\*\* The Honorable Robin J. Cauthron, Chief District Judge, United States
District Court for the Western District of Oklahoma, sitting by designation.

The Immigration Judge ("IJ") denied petitioner Navidi-Masouleh asylum and ordered his deportation to either Iran or Chile after establishing that the Iranian native had been firmly resettled in Chile before coming to the United States. The Board of Immigration Appeals ("BIA") withheld petitioner's deportation to Iran, but agreed that petitioner was not eligible for asylum because he had been firmly resettled in Chile. Petitioner contends on appeal that he should not be considered firmly resettled in Chile, and that he should therefore be granted asylum. He further asserts that the BIA erred when it granted him voluntary departure to any country of his choice within a thirty-day period before being deported to Chile because petitioner claims that there was no evidence that he had the immediate means to depart promptly from the United States. We exercise jurisdiction pursuant to 8 U.S.C. § 1105a [1] and deny the petition for review.

---

[1] Before 1996, we had jurisdiction to review final deportation orders under 8 U.S.C. § 1105a. In 1996, however, this provision was repealed by the Illegal Immigration Reform & Immigrant Responsibility Act ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009. Although Section 1105a was repealed by IIRIRA, it remains substantially in effect in those cases subject to IIRIRA's transitional rules. Because the INS commenced deportation proceedings against petitioner before April 1, 1997, the effective date of IIRIRA, and because the agency's final deportation order against him was entered after October 31, 1996, this case is governed by the pre-IIRIRA rules as amended by the transitional rules. *Woldemeskel v. INS*, 257 F.3d 1185, 1187 n.1 (10th Cir. 2001).

*I.    Background*

Petitioner is a native and citizen of Iran who was granted asylum and refugee status in Chile.

According to petitioner's testimony before the IJ, petitioner feared persecution in Iran because officials there knew he was close to a cousin active in the Mujaheddin Kalg, a political organization critical of the Iranian government. When petitioner initially fled Iran in January 1996, he made his way to Chile, and then to the United States. He was turned back in Miami, Florida, when U.S. immigration officials determined that the Swedish passport he had presented was forged.

Petitioner returned to Chile where Chilean authorities granted him political asylum and legal residence as a refugee for two years. But petitioner soon attempted to make his way back into the United States with another forged Swedish passport. Petitioner flew to Costa Rica, and traveled over land to Ciudad Juarez, Mexico, where he illegally crossed the border into the United States on November 18, 1996. Petitioner was apprehended by Immigration and Naturalization Service ("INS") [2] officials in an El Paso, Texas, hotel the next day.

---

[2]    On March 1, 2003, the INS ceased to exist as an independent agency within the Department of Justice, and its functions were transferred to the newly formed Department of Homeland Security ("DHS").    *Yuk v. Ashcroft*, 355 F.3d 1222, 1224 n.3 (10th Cir. 2004). Petitioner's hearing took place before the transfer

(continued...)

In response to the INS's Order to Show Cause and Notice of Hearing, petitioner applied for asylum, withholding of removal, and consideration under the Convention Against Torture. At his merits hearing on May 1, 2000, petitioner claimed that, while he lived in Iran, the Iranian government had kept him under surveillance, threatened him, interrogated him, and beat him for his ties to his cousin. Petitioner also said that he did not feel safe in Chile because the Iranian authorities knew he was there and because, once petitioner was in the United States, he had received a letter from an Iranian woman in Chile who said that Iranian officials had tried to locate him.

The IJ found petitioner's testimony about the extent of his persecution in Iran and his fear of persecution in Chile not credible, largely because of how vague petitioner was about the details of his relationship with his cousin and about why Iranian authorities would be interested in harming him.

In its decision on August 28, 2003, the BIA reversed the IJ's determination regarding petitioner's testimony about his experience in Iran, noting that there were plausible explanations for discrepancies in the petitioner's testimony, but the BIA agreed that petitioner could be considered firmly resettled in Chile. The BIA

----

[2](...continued)
date, but the BIA's decision was issued after the transfer date. For purposes of consistency, this opinion refers to the INS rather than the DHS.

held that the Chilean government's offer of asylum and a two-year visa qualified as an "offer of permanent resident status, citizenship, or some other type of permanent resettlement" under INS regulations. R. at 3 (quoting 8 C.F.R. § 1208.15 (2003)). And, the BIA noted, under Tenth Circuit precedent, an alien cannot unilaterally sever his ties to the third country that has offered him asylum for the purposes of pursuing his asylum claim in the United States. *Id.* (citing *Abdalla v. INS*, 43 F.3d 1397, 1400 (10th Cir. 1994)).

## II.    *Governing Law*

Petitioner does not contest the fact that entering the United States without inspection rendered him deportable. A deportable alien, however, may challenge his deportation to a particular country and may seek asylum, which precludes deportation to any country. *See* 8 U.S.C. § 1158 (1994). When asylum is denied but the alien cannot be deported to his native country, the INS may deport the alien to another country. 8 U.S.C. § 1253(a), (h) (1994). The INS may also grant voluntary departure, allowing an alien to depart to any country of the alien's choice within a prescribed period of time, before involuntarily deporting the alien to the country the agency designates. 8 U.S.C. § 1254(e) (1994).

To qualify for asylum, "the alien must prove that he or she is statutorily eligible for asylum by establishing that he or she is a refugee." *Kapcia v. INS*, 944 F.2d 702, 706 (10th Cir. 1991). Establishing refugee status requires proof of

-5-

"either past 'persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Id*. (quoting 8 U.S.C. § 1101(a)(42)). An alien is not, however, entitled to asylum based on conditions in the alien's country of origin if the alien was firmly resettled in another country before arriving in the United States. 8 C.F.R. § 207.1(b).

Because petitioner's refugee status from Iran is not at issue, on the asylum question we need address only whether petitioner was firmly resettled in Chile. [3] The agency's discretion to find resettlement is broad; our review considers only "whether the discretion was exercised and, if so, whether it was exercised in a non-arbitrary and non-capricious manner." *Kapcia*, 944 F.2d at 708 (internal quotation marks omitted). We have found the BIA to abuse its discretion only when its decision provides "'no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or

---

[3] There are two parts to the standard of review for INS decisions on asylum. *See, e.g.*, *Woldemeskel v. INS*, 257 F.3d 1185, 1189 (10th Cir. 2001). We review determinations of refugee status for whether there is substantial evidence to support the agency's decision. *Id.* "At the second step of an asylum claim, which requires the exercise of agency discretion, we review the BIA's decision for abuse of discretion." *Id.* (citing *Rezai v. INS*, 62 F.3d 1286, 1289 (10th Cir. 1995)). The parties, therefore, submitted much of their argument about the firm resettlement determination under the wrong standard. *Desta v. Ashcroft*, 329 F.3d 1179, 1181 (10th Cir. 2003).

conclusory statements.'" *Tang v. Ashcroft*, 354 F.3d 1192, 1194 (10th Cir. 2003) (quoting *Mickeviciute v. INS*, 327 F.3d 1159, 1162 (10th Cir. 2003)).

### III.    Discussion

We hold that the BIA has not abused its discretion, and we deny the petition for review. Under the "firm resettlement" rule, persons who may otherwise be granted asylum because of conditions in their country of origin are ineligible if they have firmly resettled in a third country. "An alien is considered to be firmly resettled, if prior to arrival in the United States, he or she entered into another country with, or while in that country received, an offer of permanent resident status, citizenship, or some other type of permanent resettlement." 8 C.F.R. § 208.15. Denial of asylum is mandatory when the alien has been firmly resettled. 8 C.F.R. § 208.13(c)(2)(i)(B). Petitioner also has the burden of proving by a preponderance of the evidence that the finding of firm resettlement should not apply. *Abdalla*, 43 F.3d at 1399; *see* 8 C.F.R. § 208.13(2)(ii).

Petitioner was offered asylum by Chile and a two-year visa in that country. He does not deny that the offer was made, and that he could legally have stayed in Chile. Petitioner cites no evidence other than a letter that he received in the United States to assert that, because he would feel unsafe in Chile, the INS should grant him asylum here.

According to INS regulations, a petitioner may contest a finding of firm resettlement by establishing that "the conditions of his/her residence in [the third] country are so restrictive as to deny resettlement." 8 C.F.R. § 207.1(c). To evaluate this issue, the INS considers "the conditions under which other residents of the country live," particularly

> (1) [w]hether permanent or temporary housing is available to the refugee in the foreign country; (2) nature of employment available to the refugee in the foreign country; and (3) other benefits offered or denied to the refugee by the foreign country which are available to other residents, such as (i) right to property ownership, (ii) travel documentation, (iii) education, (iv) public welfare, and (v) citizenship.

*Id.*

But, although petitioner couches his argument as an objection to the BIA's finding of firm resettlement, he also concedes the facts necessary for the BIA to make its finding, and his argument about the letter does not address any of the factors that might challenge the BIA's conclusion. In the resettlement context, the INS may consider only whether the country in which the petitioner may have been firmly resettled is extending him the same rights and privileges as it extends to other residents there. *See id.* Because petitioner makes no argument along these lines, petitioner has not established that the BIA's finding of his firm resettlement in Chile lacks "'rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or

conclusory statements.'" *Tang*, 354 F.3d at 1194 (quoting *Mickeviciute*, 327 F.3d at 1162). We therefore hold that the BIA's finding was not an abuse of discretion.

We also consider, though, whether petitioner's argument about the letter may instead be a claim that he fears persecution in Chile from Iranian officials, and that he requests personal asylum from conditions in Chile. Yet petitioner would have to prove more to establish an asylum claim from Chile than he would have to prove to contest a finding of firm resettlement there. And petitioner's testimony about the single letter that he received in the United States is not enough to establish proof of "past persecution or a well-founded fear of persecution" in Chile on the basis of his association with his cousin. *Kapcia*, 944 F.2d at 706. Petitioner, for example, does not explain what harm he fears from being located by the Iranian government in Chile. He also provides no explanation why the Chilean officials who granted him asylum would not protect him from the danger he fears from being located by the Iranian government. Because petitioner's argument about the meaning and importance of the letter he received is so vague, we hold that he has also not established a claim for asylum from Chile.

Finally, we turn to petitioner's objection to the BIA's grant of a voluntary departure, and we note that petitioner's objection neither establishes a basis for us

to assert jurisdiction nor does it allege prejudice from the BIA's action. Under

IIRIRA § 309(c)(4)(E), we do not have jurisdiction to review the BIA's

discretionary decision to grant petitioner voluntary departure. [4] Additionally,

because petitioner's brief was counseled, we assume that he is aware that the

BIA's granting of a voluntary leave period is generally considered preferable to

the alternative of immediate involuntary deportation. Petitioner has failed to

allege prejudice from the grant of voluntary departure. Thus, even if the BIA's

grant of voluntary departure were reviewable as error, that error would be

harmless.

---

[4] Section 309(c)(4) applies to cases commenced before April 1, 1997, "in which a final order of exclusion or deportation is entered more than 30 days after the date of enactment of this Act [September 30, 1996]." *Id.* § 309(c)(4), 110 Stat. at 3009-626. And, for aliens who have a final order of deportation entered against them after October 30, 1996, Section 309(c)(4)(E) dictates that "there shall be no appeal of any discretionary decision under section 212(c), 212(h), 212(i), 244, or 245 of the Immigration and Nationality Act (as in effect as of the date of enactment of this Act)." *Id.* § 309(c)(4)(E), 110 Stat. at 3009-626. Accordingly, because petitioner does not contest that the BIA granted him voluntary departure under the old (pre-IIRIRA) § 244 of the INA, we may not review that part of the agency's decision. *See generally, e.g.*, *Tamas-Mercea v. Reno*, 222 F.3d 417, 427 (7th Cir. 2000) (discussing voluntary departure).

*IV.* *Conclusion*

For the reasons stated above, we hold that the petition for review is DENIED.

Entered for the Court


Robin J. Cauthron
Chief District Judge